UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANNEN BOYD, | |
| Plaintiff, | Case No. 22-CV-7012 |
| v. | |
| ADVANCED PHYSICIANS | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shannen Boyd sues her former employer, Defendant Advanced Physicians ("Defendant"), claiming discrimination based upon her race and her role as a caregiver and claiming constructive discharge, all in violation of Title VII of the Civil Rights Act of 1964 (Counts I–III), and the Illinois Human Rights Act ("IHRA") (Counts IV–V). [14]. Defendant moves to dismiss all claims against it. [16]. For the reasons explained below, the Court grants in part, and denies in part, Defendant's motion.

I.  **Factual Background**[1]

Defendant Advanced Physicians, located in Willowbrook, Illinois, is a clinic owned by Dana Valladingham-Carter ("Carter"). [14] ¶¶ 4, 15. On May 22, 2020, Defendant hired Plaintiff—an African American female and single parent—as a Chiropractor. *Id.* ¶¶ 10–14. Carter supervised Plaintiff during her employment with Defendant. *Id.* ¶ 48.

---

[1] The Court draws these facts from Plaintiff's Amended Complaint (hereinafter, "Complaint"), [14], which it takes as true for purposes of Defendant's motions to dismiss.

1

The Complaint alleges that on a "consistent" basis throughout Plaintiff's employment, Carter called Plaintiff derogatory names, such as "retard" and "stupid," and names "associated with slavery," like "little girl." *Id.* ¶¶ 16–17. During Plaintiff's employment, Carter regularly commented on the hair of all African American female patients, describing the texture as "like cotton candy." *Id.* ¶ 19.

On February 5, 2022, Carter sent Plaintiff text messages that "attacked" her for being a single mother. *Id.* ¶ 20. Carter told Plaintiff she should have come to work after testing positive for COVID-19 since Carter had done so. *Id.* A few days later, on February 8, 2022, Carter sent Plaintiff "inappropriate" comments on "Instagram" regarding a photo Plaintiff posted of herself and her daughter on Plaintiff's social media page. *Id.* ¶ 21.

The following day, on February 9, 2022, Plaintiff emailed Carter expressing concern that she was scheduled to work hours not included in her employment contract. *Id.* ¶ 22. Carter responded, "My attorneys wrote this contract. You don't want to go there cuz I will," which Plaintiff perceived as a threat. *Id.* ¶¶ 22–23.

Again, on February 25, 2022, Carter degraded and belittled Plaintiff about being a mother during a "heated" phone call. *Id.* ¶ 24. Plaintiff told Carter she was proud of what she provides for her child and proud to be a doctor. *Id.* In response to the exchange, co-workers texted Plaintiff to apologize for how Carter spoke to Plaintiff. *Id.*

On March 7, 2022, during another phone conversation, Carter began to "bash" Plaintiff, questioning her education and expertise, and name-calling her, while another doctor was on the line. *Id.* ¶ 17.

Plaintiff was the only African American doctor employed by Defendant during her time at the company, and other white colleagues were not subjected to similar treatment. *Id.* ¶¶ 12, 18. Dr. Blunk, a white male who also worked as a Chiropractor for Defendant and was subject to the same policies, procedures, and guidelines as Plaintiff, was not subjected to Carter's mistreatment. *Id.* ¶ 18.

The Complaint alleges that Plaintiff was qualified to perform her job and satisfactorily performed her duties and responsibilities within Defendant's legitimate expectations throughout her tenure. *Id.* ¶¶ 14, 29. But due to Carter's treatment and "unbearable harassment," Plaintiff was forced to resign on March 12, 2022. *Id.* ¶ 25. Plaintiff felt there was no other plausible recourse, given that her attempts at addressing the situation with Carter proved futile, and Carter was both her boss and the owner of the company. *Id.* ¶ 48.

On March 18, 2022, Plaintiff filed a Charge of Discrimination alleging race and caregiver discrimination and constructive discharge with the Equal Employment Opportunity Commission ("EEOC"); she received a Notice of Right to Sue on September 15, 2022. *Id.* ¶ 5. She then requested a Notice of Right to Sue from the Illinois Department of Human Rights and received that notice on September 27, 2022. *Id.* ¶¶ 7–8.

3

Plaintiff initiated this lawsuit on December 13, 2022, [1], and subsequently amended her complaint on February 23, 2023, [14]. Plaintiff claims: (1) Title VII race discrimination (Count I); (2) Title VII caregiver discrimination (Count II); (3) Title VII constructive discharge (Count III); and (4) discrimination and constructive discharge under the Illinois Human Rights Act (Counts IV–V). *Id*.

Defendant now moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), arguing that: (1) Plaintiff fails to adequately plead certain elements of her Title VII and IHRA race discrimination claims; (2) caregiver discrimination must stem from gender and not race; (3) constructive discharge is not a viable cause of action under Title VII; and (4) even if it is, Plaintiff's allegations are deficient and simply mirror the facts pled in her race discrimination claims. [17]. The Court considers each argument in turn below.

## II.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raises a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). Importantly, a motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).

In analyzing motions to dismiss, the Court construes the complaint in the light most favorable to Plaintiff, accepts all well-pled allegations as true, and draws all reasonable inferences in Plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021). The Court need not, however, accept legal conclusions or conclusory factual allegations. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

### III. Discussion

#### A. Race Discrimination Claims (Counts I & IV)

In Counts I and IV, the Complaint alleges that Defendant discriminated against Plaintiff because of her race, and Plaintiff suffered adverse employment actions because of the discrimination. [14] ¶¶ 25, 32, 61.

The analytical framework for Title VII and the IHRA is "virtually identical," so this Court addresses Counts I and IV together, under Title VII. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016); *see also Volling v. Kurtz Paramedic*, 840 F.3d 378, 382–83 (7th Cir. 2016) (applying Title VII framework to IHRA claims at the motion to dismiss stage).

Title VII makes it unlawful for an employer "to discriminate against any individual" with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a race discrimination claim under Title VII, an employee must plausibly allege in the complaint that she was subjected to intentional discrimination based upon her race, though these allegations can be made quite generally. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081, 1084 (7th Cir. 2008).

**1. Adverse Employment Action**

Defendant first argues that Plaintiff's Title VII race discrimination claims fail because Plaintiff has not alleged that she suffered any adverse employment action. [16] at 5–6. Defendant contends that Plaintiff's race discrimination claims are solely based upon the theory that she was constructively discharged, but Plaintiff has failed to allege facts to establish a legally sufficient "hostile work environment." *Id.*

To survive a motion to dismiss, a complaint alleging race discrimination "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff" on the basis of her race. *Luevano v. Wal-Mart Stores, Inc.*, 722 F. 3d 1014, 1028 (7th Cir. 2013) (quoting *Tamayo*, 526 F.3d at 1084). This "minimal pleading standard" requires a complaint to give the defendant "sufficient notice to enable the defendant to begin to investigate and prepare a defense." *See Tamayo*, 526 F.3d at 1084.

An adverse employment action is one that significantly alters the terms and conditions of the employee's job. *Appleton v. City of Gary*, 781 Fed. App'x. 501, 504 (7th Cir. 2019). Adverse employment actions "generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.,* 662 F.3d 448, 453–54 (7th Cir. 2011). While not everything that makes an employee unhappy is an actionable adverse

6

action, an action that alters the employee's working conditions in a "humiliating, unsafe, or otherwise negative way" can qualify. *Hobbs v. Dart*, No. 20-cv-6513, 2021 WL 1906465, at *13 (N.D. Ill. May 12, 2021); *Haley v. Urban Outfitters*, No. 22-1932, 2023 WL 1775670, at *8 (7th Cir. Feb. 6, 2023).

*Tamayo* is instructive. There, the plaintiff alleged that she had been "subject to adverse employment actions" due to her gender and "listed specific adverse employment actions," including that the agency for whom she worked ostracized her due to her sex, banned her from important meetings, and prohibited her from working on important matters. *Tamayo,* 526 F.3d at 1079. She further alleged similarly situated male employees were not subject to such actions. *Id*. The Seventh Circuit found these allegations sufficient to plead a Title VII sex discrimination claim. *Id*. at 1085. Just so here.

Applying the *Barton* framework, Plaintiff's allegations fall into the third category of adverse employment actions, "unbearable changes in job conditions." *See* [14] ¶ 5. Indeed, Plaintiff alleges that she was subjected to a hostile work environment and then constructively discharge based upon her race. Specifically, Plaintiff alleges that Defendant's "constant unbearable harassment," created a "hostile work environment" for her. *Id.* ¶ 23. Plaintiff provides examples of this harassment, including Carter's calling her derogatory names in front of colleagues, sending her harassing messages on social media, and threatening her when she refused to work extracontractual shifts. *Id*. ¶¶ 23, 25. Plaintiff alleges that these actions humiliated her, "materially and adversely affected the terms, conditions, and

7

privileges," of her employment, and ultimately left her with "no plausible recourse other than to resign." *Id.* ¶¶ 25, 26, 30, 69.

Relying on *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 814–15 (7th Cir. 2022),[2] Defendant argues that Count I fails because it is "founded solely on" a constructive discharge theory, and Plaintiff fails to sufficiently allege a hostile work environment. [24-1].[3] Although the Court does not read Plaintiff's Complaint so narrowly, it nonetheless finds Plaintiff's allegations sufficiently allege a hostile work environment at this stage of the proceedings.

To state a hostile work environment claim, Plaintiff must allege that: (1) she was subject to unwelcome harassment; (2) the harassment was based upon her race; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) a basis for employer liability exists. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015). The factual allegations described in detail above plausibly state each of these elements. Defendant argues the Complaint falls short because they do not allege conduct with "even *some* connection to her race." [16-1] at 3. For the reasons explained herein, the Court disagrees and denies the motion to dismiss Counts I and IV on this basis.

---

[2] *Paschall* evaluated the sufficiency of evidence to *prove* a hostile work environment claim based upon race. [16] at 6. But *Paschall* is inapposite here, because this Court considers Plaintiff's allegations today under far more lenient standards. *See Nadeem v. Viscosity Oil Company*, No. 19-cv-8253, 2023 WL 4318094, at *6 (N.D. Ill. Sept. 23, 2021).

[3] *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) (holding that a hostile-work-environment claim is a "lesser included component" of the "*graver* claim of hostile-environment constructive discharge").

### 2. Racial Animus

Defendant next argues that the allegations do not state a cause of action for race discrimination under Title VII because the conduct fails to suggest racial animus or any connection to Plaintiff's race. [16] at 5–6. The allegations show otherwise.

As a preliminary matter, where "a plaintiff alleging illegal discrimination has clarified that it is on the basis of race, there is no further information that is both easy to provide and of clear critical importance to the complaint." *Tamayo,* 526 F.3d at 1084. In *Bennett v. Schmidt*, the Seventh Circuit observed that "'I was turned down for a job because of my race' is all a complaint has to say." 153 F.3d 516, 518 (7th Cir. 1998). Plaintiff's Title VII race discrimination claim meets this "minimal pleading standard." *See Tamayo*, 526 F.3d at 1084. Plaintiff alleges that she is African American, and she "satisfactorily performed her duties and responsibilities within Defendant's legitimate expectations." [14] ¶¶ 28–29. Plaintiff further alleges that Defendant treated her differently from similarly situated white employees, and she was subjected to adverse employment actions by Defendant on account of her race. *Id.* ¶¶ 18, 30, 32. Significantly, Plaintiff alleges that Carter called her "derogatory names" "associated with slavery" and made improper comments about the texture of African American hair. *See* ¶¶ 16, 18. In short, Plaintiff has sufficiently alleged specific instances of discriminatory behavior that state viable claims of race discrimination. As a result, the Court denies Defendant's motion to dismiss Counts I and IV.

B.  Title VII Caregiver and Race Discrimination (Count II)

In Count II, Plaintiff alleges that Defendant discriminated against her in violation of Title VII because she is a single, African American caregiver. *Id.* ¶ 41. Defendant moves to dismiss the claim, arguing that caregiver or family responsibility claims relate to gender discrimination, not race discrimination. [16] at 7–8.[4]

To support the viability of her race "plus" claim, Plaintiff relies upon EEOC guidance and examples from the agency's website. [21] at 5 n.1. In the EEOC example, a hypothetical African American mother was unlawfully denied the opportunity to use compensatory time to address personal caregiving responsibilities based on her race. *Id.*

As Defendant points out, however, this guidance also states that caregivers are not a protected group under federal equal employment opportunity statutes. [22] at 6; [21-1] at 1. This guidance remains consistent with precedent from the Seventh Circuit, which has not explicitly recognized these types of "plus" claims under Title VII. *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 563 (7th Cir. 2009) ("We have not yet decided in this circuit whether we recognize a 'sex-plus' theory of discrimination . . . ."); *Barnes-Staples v. Carnahan*, 88 F.4th 712, 719 (7th Cir. 2023)

---

[4] More precisely, the plain language of Title VII does not prohibit discrimination solely based upon caregiving responsibility or family responsibilities. *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009); *Gingras v. Milwaukee County*, 127 F. Supp. 3d 964, 973 (E.D. Wis. 2015). Even though some courts have recognized a protected characteristic "plus" claim (which hinges on disparate treatment based upon a protected characteristic in conjunction with another characteristic), *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 563–64 (7th Cir. 2009), such "plus" claims are "really a subcategory" of discrimination claims, and a plaintiff must allege discrimination, harassment, or retaliation based upon a protected characteristic plus familial status and not familial status alone. *Palomares v. Second Fed. S&L Ass'n of Chi.*, No. 10-cv-6124, 2011 WL 760088, at *7–8 (N.D. Ill. Feb. 25, 2011) (citing *Coffman*, 578 F.3d at 563).

("Even assuming 'an intersectional theory of discrimination' can produce a viable claim . . . ."). In the absence of support in the law of this circuit or the text of Title VII itself, this Court finds no basis for recognizing the novel cause of action alleged here under Title VII,[5] and dismisses Count II. *See Hunter v. Univ. of Chi.,* No. 17-cv-3456, 2017 WL 5505020, at *4–5 (N.D. Ill. Nov. 16, 2017) (noting that "race plus claims and sex plus claims are two types of 'intersectional discrimination' claims that have been recognized in certain circuits," but declining to recognize this "novel" cause of action because the Seventh Circuit has not done so). As a result, this Court need not reach Defendant's additional challenges to Count II.

### C. Title VII Constructive Discharge and IHRA Constructive Discharge (Counts III & V)

In Counts III and V, Plaintiff alleges that Defendant's harassment created an intolerable work environment which led to Plaintiff's constructive discharge. Defendant argues these claims should be dismissed because constructive discharge itself is not an actionable, separate claim under Title VII. [16] at 8, 10. Defendant further argues that Plaintiff' has insufficiently alleged a hostile work environment and constructive discharge, merely parroting her race discrimination claim. *Id.* at 10; [22] at 7–10.

Not so. In *Green v. Brennan,* the Supreme Court held that "constructive discharge is a claim distinct from the underlying discriminatory act," and reiterated

---

[5] In failing to recognize an independent discrimination claim based upon Plaintiff's caregiver status, this Court does not suggest that Plaintiff's harassment allegations related to her caregiver status are irrelevant. Rather, as explained above, those allegations support the adverse employment actions Plaintiff claims she suffered due to her race, *i.e.,* unbearable harassment and constructive discharge, as well as her separate constructive discharge claim.

11

that a "claim for constructive discharge lies under Title VII." 578 U.S. 547, 559 (2016) (quoting *Suders*, 542 U.S. at 142). The Court rejected arguments that constructive discharge is not a separate claim but "merely allows a plaintiff to expand any underlying discrimination claim to include the damages for leaving his job, thereby increasing his remedies." *Green*, 578 U.S. at 558.

To establish a claim for constructive discharge, a plaintiff must plausibly allege that: (1) she was discriminated against by her employer to the point where a reasonable person in her position would have felt compelled to resign; and (2) that she actually resigned. *Id.* at 555. Generally, to support this claim, a plaintiff's working conditions must be even more egregious than the high standard for hostile work environment claims because employees are generally expected to remain employed while seeking redress. *Boumehdi v. Plastag Holdings, LLC*, 481 F.3d 781, 789 (7th Cir. 2007). Accordingly, a plaintiff may maintain both hostile work environment and constructive discharge claims in the same lawsuit. *See id.*

The Court finds *Carlson v. CSX Transp. Inc.*, 758 F.3d 819 (7th Cir. 2014) instructive. In *Carlson*, the plaintiff alleged that her employer treated her so poorly, with regular belittlement, unfair criticism, and unduly harsh assessments, that she dropped out of a manager training program. *Id.* at 829–30. The district court determined that Plaintiff's work environment allegations were insufficient to state a constructive discharge claim. The Seventh Circuit reversed, stating that although a work environment "must be intolerable to support a constructive discharge claim,"

12

the conditions Carlson described in her complaint sufficed at the pleading stage. *Id*. at 830.

Like Carlson, Plaintiff alleges conditions that may well evidence a work environment so intolerable that it amounts to constructive discharge; she alleges "specific examples of poor treatment" based, at least in part, on her race. *See id*. Plaintiff alleges that Carter regularly called her "derogatory names," "associated with slavery," regularly belittled and degraded Plaintiff, in front of others and on social media, and threatened Plaintiff when she balked at working shifts she was not contractually obliged to work. [14] ¶¶ 16, 17, 21, 22–23. Plaintiff alleges that Carter's mistreatment was so bad that her co-workers apologized that Plaintiff had to endure it; she also alleges that Carter did not treat Plaintiff's white male colleagues with such disrespect. *See id*. ¶¶ 12, 18, 24. Plaintiff also alleges that, because Carter was her supervisor and the owner of the company, Plaintiff felt she had no choice but to resign. Plaintiff alleges, in other words, that working conditions were so "intolerable" that she was forced to resign. As in *Carlson*, the Court cannot say at this early stage that her claim necessarily fails. 758 F. 3d at 828.

Finally, at this stage, the Court rejects Defendant's argument that Counts III and V are merely duplicative of Counts I and IV. [16] at 9. The Supreme Court recognizes a separate cause of action for constructive discharge. *Green*, 578 U.S. at 559. Counts I and IV assert theories of race discrimination beyond constructive discharge. *See* [21] at 4. If, after the benefit of a full record, the Court later

13

determines otherwise, these claims may fail.  For now, the Court denies Defendant's motion on this basis.  Counts III and V may proceed.

## IV. Conclusion

For the reasons explained above, the Court grants in part, and denies in part, Defendant's motion to dismiss [16].  The Court grants Defendant's motion to dismiss Count II.  Counts I, III, IV, and V may proceed.

Dated: March 29, 2024

Entered:

John Robert Blakey
United States District Judge